# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

ARTHUR WIENER,

                              Plaintiff,

         v.

LOWE'S HOME CENTERS, LLC,

                              Defendant.

Index No. 504650/2023

**SUMMONS**

Plaintiff designates Kings County
as the place of trial.

To:    Lowe's Home Centers, LLC
       1000 Lowe's Boulevard
       Mooresville, North Carolina 28117

PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED to answer the complaint of the plaintiff herein and to serve a copy of your answer on the plaintiff's counsel at the address indicated below within 20 days after the service of this Summons (not counting the day of service itself), or within 30 days after service is complete if the Summons is not delivered personally to you within the State of New York.

YOU ARE HEREBY NOTIFIED THAT should you fail to answer, a judgment will be entered against you by default for the relief demanded in the complaint.

The basis of venue is CPLR § 503(a) in that one or more of the parties is a resident of the County of Kings as of the commencement of this action.

Dated: New York, New York
       February 13, 2023

                                   **Dilworth Paxson LLP**

                                   By: *Ira N. Glauber*
                                   ─────────────────────
                                   Ira N. Glauber
                                   99 Park Avenue, Suite 320
                                   New York, New York 10016
                                   Tel: (917) 675-4252
                                   iglauber@dilworthlaw.com
                                   *Attorneys for Plaintiff Arthur Wiener*

123124872-1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

---

ARTHUR WIENER,

                                    Plaintiff,

        v.

LOWE'S HOME CENTERS, LLC,

                                    Defendant.

Index No. *504650/2023*

**COMPLAINT**

---

Plaintiff Arthur Wiener, by his undersigned attorneys, Dilworth Paxson, LLP, as and for his complaint herein against defendant Lowe's Home Centers, LLC, alleges as follows:

1.      Plaintiff Arthur Wiener ("Wiener") is an individual who resides at 102 Coleridge Street, Brooklyn, New York, 11235.

2.      Defendant Lowe's Home Centers, LLC ("Lowes") is a limited liability company organized and existing under the laws of the state of North Carolina whose corporate headquarters are located at 1000 Lowe's Boulevard, Mooresville, North Carolina.  Lowes is a foreign limited liability company authorized to do business in the State of New York which operates hundreds of home improvement stores throughout the United States including many in the State of New York.

3.      This is an action for negligence, breach of contract, and other claims arising out of Lowes' negligent installation of about 40 windows that Lowes sold to plaintiff and installed in plaintiff's home.   Loews' improper workmanship, complete and utter incompetency, and negligence caused all of the windows to leak, which in turn caused plaintiff's home to be infested by mold, which is hazardous to people's health. Lowes has completely ignored its responsibilities to correct the hazardous condition that it created and refuses to compensate Plaintiff for his damages, which exceeds $100,000.

## The Facts

4.    Wiener is the owner of a single family house located at 254 East Drive, Walden, New York 12586 (the "House"), which is in the Catskills, near Newburgh, New York. Wiener rents the House to a tenant who has lived in it for several years.

5.    In the fall of 2021, Wiener was looking for a window sales and installation company to sell and install a full set of about 40 new windows to replace the existing windows in the House.  Instead of using a small "mom and pop" company for his window replacement project, Wiener decided to use Lowes for the project because of its well-known reputation. He believed that a large company such as Lowes would stand by the windows sold and installed by it, and would make sure that no problems developed with the project.

6.    On or about October 2, 2021, Lowes' representative, Richard Sampson ("Sampson"), met with Wiener's representative at the House to discuss the project. Sampson said that aluminum window "copping," and all other window trim, was included in the purchase price for the window project. Aluminum window "copping" is a protective strip of aluminum placed around the windows to protect the wood trim and prevent the windows from leaking.

7.    Based on Lowes' representations (made by its duly authorized agent Sampson) that aluminum copping would be used to protect the windows from leaking, and that the price quoted by Lowes for the project would cover the entire job, including the installation of aluminum copping, Wiener agreed to proceed with the purchase from Lowes.

8.    On or about October 3, 2021, Wiener and Lowes agreed at a price of $30,950 for the purchase and installation of 40 windows to replace the existing windows in the House. Lowes agreed that the windows would be "plumb & square," would carry a lifetime warranty on the windows and glass, and that the window installers would be licensed, insured, and fully backed by Lowes.

123123111-1

9.      Lowes agreed that the completion date for the project would be December 28, 2021. However, Lowes did nothing at all to move the project forward during the last three months of 2021. During this time, Wiener tried to contact Lowes for information about when the windows would be installed, but Lowes gave him the "run around" and never gave him any response. Finally, Wiener learned that Sampson was no longer working for Lowes.

10.     Plaintiff contacted Sampson's replacement, Sean Steinbach, for information, but Mr. Steinbach said that the window job for Wiener's house was assigned to a different Lowes store, and therefore it was out of his hands. Wiener spent months trying to get someone at Loews to address the problems, but no one responded.

11.     Although the windows were supposed to be installed by year end 2021, it was not until February 2022 that Lowes finally began the window installation.

## A.      The Window Leaks

12.     Soon after Lowes' installation of the windows in the House, leaks and water penetration began to appear around the windows installed by Loews. The reason for the leaks and water penetration was that the Lowes installer removed the existing aluminum copping on all 40 windows that protected the wood trim from rain and snow, but failed and refused to replace it with aluminum copping, as required in any structure constructed of aluminum siding, such as Wiener's House.

13.     It is standard in the industry for a house made with aluminum siding to have aluminum copping. Loews violated industry standards and normal construction techniques by removing the aluminum copping on all 40 windows of the House and not replacing it with aluminum copping.

14.     With respect to some of the windows, instead of using aluminum copping, Loews' installer used a material known as PVC trim that should not have been used in a house with aluminum siding (such as plaintiff's House). The material used by Lowes did not adequately protect the wood trim from water penetration.   Even worse, on 26 of the newly installed windows, the Loews installer removed the existing aluminum copping but did not install any protection whatsoever around the windows. This left the wood trim completely unprotected from water penetration.

15.     Loews' failure to install aluminum copping around the 40 windows that it installed caused the wood trim around the windows to crack, allowing water to enter the interior of the House.   Before Lowes removed the aluminum copping, the wood trim around the windows was fully protected and there was no exposed wood because it was all covered with aluminum.   Lowes' removal of the aluminum copping left gaps of between one to five inches around the bottom and sides of each of the 40 windows installed by it, which was the cause of the water penetration.   Annexed hereto as Exhibit A are a number of photographs of before and after Lowes' installation which clearly shows that Lowes negligently left the wood trim around the windows unprotected.

16.     The installer used by Lowes for this project readily admitted his mistake, but tried to justify his incompetence by claiming that his company does not install aluminum copping because it is not in their contract with Loews to do so.   However, this does not excuse Lowes' failure to adhere to basic industry standards for preventing water penetration from a window installation.

123123111-1

17.     On or about July 28, 2022, Wiener hired an expert from Windoor Pro Inc. to inspect Lowe's work, a copy of whose report is attached hereto as Exhibit B.  It states in pertinent part as follows:

> "When the new windows were installed (40 windows), the existing aluminum copping and sealant were removed in all window openings. After the installation of new windows, new aluminum copping was not installed.  Instead, on some of the windows polyurethane trim was installed improperly, not conforming to industry standard, leaving gaps between the existing aluminum siding and the new trim. The rest of the windows [were] left with no trim at all . . . Due to the defective installation of the new windows, water penetrates through the gaps between the windows and the siding which cause damage to the basement ceiling and first floor walls and floors.  We assume that most of the damage (i.e. mold) is hidden behind the wall covering and flooring.  We will have to probe the walls ceilings and floors in order to assess the damage accurately."

18.     Subsequently, the walls and ceiling of the house were probed for mold, which revealed that the house is infested with mold behind the sheetrock, in the ceilings, and under the floors. A copy of the September 15, 2022 Mold Assessment by Valcon Environmental and Mechanical Contracting LLC is attached hereto as Exhibit C.

19.     The mold was caused by Lowes' removal of the existing aluminum copping and its failure to replace it with new aluminum copping after the new windows were installed, which allowed water to penetrate the house from the unprotected wood trim. The water penetration was worst in the master bedroom, front bedroom, and living room as well as near the windows facing the back porch, where water pooled on the floor because Lowes left the wood trim of the windows unprotected.

20.     The water penetration, leaks, and mold was a direct and proximate result of the negligent and defective installation of the windows by Lowes, which failed to comply with industry standard and normal construction practices requiring that wood trim for window

installations must be protected by aluminum copping in houses constructed of aluminum siding such as the Wiener House.

21.     The water penetration and leaks caused by Lowes' incompetence and negligence not only caused mold to grow in the house, but it threatened the very structure of the House by causing the unprotected wood to rot.

22.     In addition, the tenants renting the house from Wiener suffered adverse health effects from the mold, which caused them to suffer physical injury for which they have threatened to bring suit against Wiener.

23.     In order to prevent further damage to the House from the water penetration, in the summer of 2022, Wiener had a window contractor install aluminum copping around each of the windows, at a cost of approximately $9,000. This is what Lowes should have done from the outset.   Once Wiener's contractor installed the aluminum copping, the leaks and water penetration stopped.

24.     On October 3, 2022, counsel for Wiener sent a letter to Lowes putting it on notice that suit will be commenced unless Lowes compensates Wiener for the damage caused by its incompetent workmanship and negligent installation of the windows in the House.  Lowes failed and refused to offer any compensation to Wiener for the damage it caused except for a nominal offer which is substantially less than Plaintiff's actual damages.

25.     Counsel for Wiener followed up its October 3, 2022 letter with emails to Scott Draughn of Lowes' claims department dated October 14, 2022, November 17, 2022, December 22, 2022, January 18, 2023, and February 10, 2023. These emails each provided Lowes with the information it requested to issue full compensation to Wiener. Nonetheless, Lowes has steadfastly refused to compensate Wiener for the full amount of his damages.

123123111-1

26.     In particular, on January 6, 2023, Wiener entered into a Mold Remediation Service Agreement with RM Environmental Specialists for the mold to be remediated, and the House to be restored to the condition it was in before the mold remediation, at a price of $87,000. A copy of this agreement is annexed hereto as Exhibit D.

27.     On January 18, 2023, counsel for Wiener forwarded a copy of the Mold Remediation Agreement to Lowes with a request that it pay the cost of remediating the mold that it caused in the House. Lowes has failed and refused to comply with that request, or to compensate Wiener for any of the other damages sustained as a result of Lowes' incompetence and negligence.

**B.    Other Window Problems**

28.     The leaks and water penetration was not the only problem caused by Lowes' incompetence and negligence.  In addition, the two bathroom windows delivered by Lowes had clear glass instead of frosted glass, which was a clear mistake for bathroom windows. And a small slider window for the basement was never delivered until almost a year after delivery of the other windows.

29.     Lowes sent replacement windows for the two bathroom windows but the sashes of the replacement bathroom windows were the wrong size and could not be installed.  Lowes did not fix this problem until late in 2022.  Thus, a window replacement project that was supposed to be completed by year end 2021 was not finally completed by Lowes until in or about year-end 2022 because of Lowes' negligence and incompetence.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Negligence)

30.     Plaintiff repeats and re-alleges herein all of the foregoing allegations of this complaint as though fully set forth at length herein.

123123111-1

31.     Lowes owed plaintiff a duty to carry out its window installation responsibilities in a skillful and careful manner that would safeguard the House from leaks and water penetration. Pursuant to its duty of care and skill, Lowes was obligated to comply with industry standards and well-known construction techniques requiring it to install aluminum copping when it removed the aluminum copping around the windows in the House in order to protect the House from leaks and water penetration.

32.     Lowes breached its duty of care and skill by intentionally removing the aluminum copping around the windows in the House, and negligently failing to replace it with new aluminum copping in breach of its duty to plaintiff to take suitable precautions to protect the House from leaks and water penetration.

33.     As a direct and proximate cause of Lowes' negligence, plaintiff suffered property damage to the House in an amount to be determined by the court, but believed to be no less than $100,000.

34.     Plaintiff duly demanded compensation from Lowes for the damages that he suffered as a result of Lowes' negligence, but Lowes has failed and refused to compensate Wiener.

35.     Plaintiff did not contribute in any way to the damages he suffered, which were caused entirely by Lowes' negligence and carelessness.

36.     By reason of the foregoing, Wiener is entitled to damages in an amount to be determined by the court but believed to be no less than $100,000,

## AS AND FOR A SECOND CAUSE OF ACTION
### (Gross Negligence)

37.     Plaintiff repeats and re-alleges herein all of the foregoing allegations of this complaint as though fully set forth at length herein.

123123111-1

38.     Lowes acted in a grossly negligent, grossly careless, and reckless manner by removing the existing aluminum copping around the House's 40 windows, and then inexcusably failing to install aluminum copping to replace the aluminum copping it removed from the Wiener House in violation of its duty to comply with industry standards and basic construction techniques to safeguard the House from water penetration.

39.     Lowes knew or should have known that this would cause leaks and water to penetrate the House, which would cause mold in the House, and which could threaten the structure of the House as well as the health of the House's occupants. Lowes' gross negligence, gross carelessness, and recklessness unnecessarily caused damage to plaintiff's property and created an unsafe, hazardous condition to exist in the form of mold that infested the House and that threatened the health and safety of its occupants with reckless disregard for the consequences of its actions.

40.     Lowes' gross negligence, gross carelessness, and recklessness was tantamount to willful, wanton, and morally reprehensible behavior, thus entitling Plaintiff to an award of punitive damages of no less than $100,000 in addition to the compensatory damages owed by Lowes.

41.     By reason of the foregoing, Wiener is entitled to compensatory damages in an amount to be determined by the court but believed to be no less than $100,000, plus punitive damages of no less than $100,000.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Negligent Misrepresentation)

42.     Plaintiff repeats and re-alleges herein all of the foregoing allegations of this complaint as though fully set forth at length herein.

123123111-1

43.     Lowes is a major home improvement company which holds itself out to the public as an expert in home improvement projects, such as the complete window replacement project that it agreed to perform for Wiener.

44.     Given the relationship between the parties, Lowes owed plaintiff the duty of providing him with accurate, truthful, and correct information about its skill and expertise to install the windows in plaintiff's House without defect or problem. In breach of that duty, Lowes negligently and/or recklessly misrepresented its skill and expertise for handling the window replacement project for which it was hired.

45.     In soliciting business from Wiener, Lowes represented that it has the skill and expertise to competently handle the window installation project for which it was hired by Wiener. More specifically, Lowes represented that its installer was competent to install the windows without defect or problem, and that it would back up the work of the window installer. These representations by Lowes turned out to be utterly false.

46.     Lowes acted with negligent and/or reckless disregard for the truth when it represented to Wiener that it was an expert in the field of window installations, and that it had the skill and expertise to perform its responsibilities in a competent manner without problem or defect.

47.     In reliance on Lowes' negligent and/or reckless misrepresentations, Wiener reasonably believed that Lowes would carry out its duties free from defect, and agreed to let Lowes remove all of the windows in his House and install new windows, not knowing that Lowes lacked the skill and expertise to competently install the windows free from defect.

48.     Lowes' negligent and/or reckless misrepresentations caused plaintiff to suffer damages in an about to be determined by the court, but believed to exceed $100,000.

123123111-1

49.    Lowes' negligent and/or reckless misrepresentations were tantamount to willful, wanton, and morally reprehensible misrepresentations, thus entitling Plaintiff to an award of punitive damages of no less than $100,000.

50.    By reason of the foregoing, Plaintiff is entitled to compensatory damages of no less than $100,000, plus punitive damages of no less than $100,000.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Breach of Warranty)

51.    Plaintiff repeats and re-alleges herein all of the foregoing allegations of this complaint as though fully set forth at length herein.

52.    By agreeing to replace and install 40 new windows in the House, Lowes warranted to plaintiff that the windows it installed would be free from defect, would be fit for the purpose they were installed, and would not cause leaks or water to penetrate the House.

53.    Lowes breached its warranty to plaintiff, which caused plaintiff to suffer damages in an amount to be determined by the court, but believed to be no less than $100,000, relief for which is requested herein.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Breach of Contract)

54.    Plaintiff repeats and re-alleges herein all of the foregoing allegations of this complaint as though fully set forth at length herein.

55.    In October 2021, Lowes and Wiener entered into a contract whereby Lowes agreed to sell and install 40 windows in Wiener's House, free of defect, for a price of $30,950 no later than December 31, 2021. The parties agreed that the $30,950 purchase price would include aluminum copping around the windows and all other costs related to the purchase and installation of the windows.

56.    Lowes breached its agreement with Wiener in that the windows were installed defectively without aluminum copping, and were not installed by the December 31, 2021 installation completion date required under the contract.

57.    Wiener performed all of his obligations under the contract.

58.    Without cause or justification, Lowes breached its contract with Wiener through its defective installation of the windows without aluminum copping and through its failure to meet the December 31, 2021 deadline for completion of the project.

59.    Lowes' breach of contract has caused Wiener to suffer damages in an amount to be determined by the court, but believed to exceed $100,000.

60.    Wiener duly demanded that Lowes compensate him for his damages, but Lowes has failed and refused to comply with this request.

61.    By reason of the foregoing, Wiener seeks relief against Lowes for breach of contract in the amount of no less than $100,000.

WHEREFORE, Plaintiff Arthur Wiener requests judgment against defendant Lowe's Home Centers, LLC as follows:

(i)    Compensatory damages in an amount to be determined by the Court but believed to be no less than $100,000 on its claims for negligence, gross negligence, negligent misrepresentation, breach of warranty, and breach of contract;

(ii)    Punitive damages of no less than $100,000 on its claims for gross negligence and negligent misrepresentations;

(iii)    The costs and disbursements of this action, together with reasonable attorneys' fees; and

12

(iv)    Such other and further relief as is just and proper.

Dated: New York, New York
February 13, 2023

**Dilworth Paxson LLP**

By: _Ira N. Glauber_

Ira N. Glauber
99 Park Avenue, Suite 320
New York, New York 10016
(917) 675-4252
iglauber@dilworthlaw.com
*Attorneys for Plaintiff Arthur Wiener*

123123111-1

# Exhibit A







(2)

SIDING
SIDING
NEW LOWES WINDOW
SIDING

RECEIVED NYSCEF: 02/13/2023



AFTER COPING INSTALLATION

# Exhibit B



**WINDOOR**

July 28, 2022

**To:** Arthur and Paulette Wiener
254 East Dr.
Walden NY 12586

Re: Inspection of window installation done by Lowe's

As per your request we conducted an inspection of the window installation done at the above premise. The following are our findings:

- When the new windows were installed (40 windows), the existing aluminum copping and sealant were removed in all window openings. After the installation of new windows, new aluminum copping was not installed. Instead, on some of the windows polyurethane trim was installed improperly, not conforming to industry standard, leaving gaps between the existing aluminum siding and the new trim. The rest of the windows left with no trim at all.

- Five windows do not lock properly because the installation is not leveled.

- Due to the defective installation of the new windows water penetrate through the gaps between the windows and the siding which cause damage to the basement ceiling and first floor walls and floors.

- We assume that most of the damage (i.e., mold) is hidden behind the wall covering and flooring. We will have to probe the walls ceilings and floors in order to assess the damage accurately.

We recommend installing new aluminum copping and sealant around all windows immediately in order to prevent further damage to house. After completion of the copping job, we recommend probing as mentioned above.

Respectfully,

Tony Fokshner

Windoor Pro Inc. 5954 156ᵗʰ Street Flushing NY 12355



July 28, 2022

## PROPOSAL

**To:** Arthur and Paulette Wiener

**Location:** 254 East Dr. Walden, NY

We are please to submit a proposal for labor, material and equipment for the installation of new aluminum coping at the above location including the following:

1. Furnish and install aluminum copping for 40 windows.................................$ 8,000
2. Furnish and install sealant for 40 windows.
3. Reinstall five unleveled existing windows.....................................................$ 1,000

Total    $ 9,000

All construction related debris will be carted away and premise will be broom clean. Work is guaranteed for 5 years labor and material.

Terms of payment: 50% deposit upon signing.
50% upon completion.

Insurance certificate will be provided after proposal signing.

Window Pro Inc. Authorized signature:                   Arthur Wiener

Tony fokshner

_____                    _____

**Windoor Pro Inc. 5954 156th Street Flushing NY 12355**

# Exhibit C



# VALCON Environmental and Mechanical Contracting LLC

## Environmental Consulting and Construction Management Services

25450 Bates Rd. Greatneck - NY. 11020 | www.valcon-engineering.com | 1-516 312 6589

MOLD ASSESSMENT

# 254 East Dr Walden NY 12586

Prepared By

Valcon Environmental and Mechanical Contracting LLC
25450 Bates Rd. Greatneck, New York 11020



**VALCON Environmental and Mechanical Contracting LLC**

Environmental Consulting and Construction Management Services

25450 Bates Rd. Greatneck - NY, 11020 | www.valcon-engineering.com | 1-516 312 6589

## Table of Contents

I.Introduction
II. Visual Inspection / Observations
III.Recommendations
IV.Summary and Conclusion
V.Recommended Remediation Plan
VI.Lab Results


Appendix A: Inspection Photo Documentary
Appendix B: Licenses

# VALCON Environmental and Mechanical Contracting LLC

## Environmental Consulting and Construction Management Services

25450 Bates Rd. Greatneck - NY, 11020 | www.valcon-engineering.com | 1-516 312 6589

### I.Introduction

Valcon Environmental conducted a preliminary non-intrusive mold inspection of the accessible interior living spaces and have prepared this report summarizing our inspection findings and laboratory results located at:

## 254 East Dr Walden NY 12586

The inspection was initiated following **visible mold complaints by the tenant.** The purpose of this assessment was to identify the presence or absence of mold growth, conditions conducive to mold growth and to determine the indoor air quality as it relates to mold.

The inspection was performed on **9/15/2022** by a Valcon representative who is certified by the NYSDOL (Lic N0:MA 02358 / Expires : 12-23)

The survey was conducted in accordance with the requirements of Article 32 of the New York State Department of Labor (NYSDOL) and consisted of the following activities:

- A visual inspection to identify mold growth and/or water damaged materials
- Air Samples
- Moisturemeter testing to identify damp/wet interior surfaces
- Photo documentation



## VALCON Environmental and Mechanical Contracting LLC

### Environmental Consulting and Construction Management Services

25450 Bates Rd. Greatneck - NY, 11020 | www.valcon-engineering.com | 1-516 312 6589

---

### II.Observations

The tenant mentioned the exterior window sill caps were not placed after renewal of windows.

The interior temperature was 76 degrees and relative humidity was 64% in the house.

**1.Basement** There were bedroom, open area, bathroom, mechanical room and water treatment room, storage in the basement.

Walls and ceiling were sheetrock, flooring was ceramic floor tile.

**Odor was present** at the time of inspection.

**Elevated moisture readings were noted at the north wall in the basement open area.**

    1.1.   **SW Bedroom: Visible mold growth observed** around the corners between floor and walls and behind the sheetrock walls at the time of inspection.

        **Elevated moisture readings were noted at the walls**

        **Odor was present** at the time of inspection

    1.2.   **Water Treatment Room: Visible mold growth observed** on the sheetrock wall at the time of inspection. Floor was wet

        **Elevated moisture readings were noted at the sheetrock wall.**

        **Odor was present** at the time of inspection

**2.1st Floor :** There were 2 bedrooms, one Living Room and Kitchen area, 1 bathroom 1 closed balcony in the first floor..

    **2.1. Master Bedroom:** The ceiling was 12*12 Acoustic Ceiling Tile and there was old water leak stains at the ceiling. It was dry at the time of inspection.

    **Odor was present** at the time of inspection

Exterior Walls were covered with thick wood panels and they were dry at the time of inspection. Possible hidden mold growth behind the thick wood panels

    **2.2. Living Room and Kitchen :** Walls and ceiling was sheetrock . North wall was wet and there was **visible mold around the fire place**

    **2.3.Closed Balcony at the West:** Walls were covered with wood panels. Walls measured wet under the windows at the time of inspection.

 **VALCON** Environmental and Mechanical Contracting LLC

Environmental Consulting and Construction Management Services

25450 Bates Rd. Greatneck - NY, 11020 | www.valcon-engineering.com | 1-516 312 6589

III. Recommendations:

--Root causes of water infiltration should be addressed.

--All deteriorated/wet/stained sheet rock , wood panels, insulation should be replaced. Surfaces behind the sheetrock and wall panels should be scrubbed, cleaned and disinfected

- Additional hidden mold may be discovered once the initial removal work begins.

IV. Summary and Conclusion

> Based on the findings of our visual assessment, lab results  and measurements the professional mold remediation is needed.

The removal should be performed in accordance with the mold remediation recommendations established by the New York City Department of Health and Mental Hygiene.

V. Recommended Scope / Plan

| Location | Material | Quantity | Comment |
|---|---|---|---|
| Basement | Sheet Rock Walls, Insulation behind the sheetrock | Entire basement | All deteriorated sheet rock and wet/stained insulation should be replaced, underlaying surfaces should be scrubbed, cleaned and disinfected |
| 1st Floor | Sheet Rock Walls, Insulation behind the sheetrock<br><br>Wood Panels, Insulation behind the wood panels | Living Room, Kitchen, Master Bedroom | All deteriorated sheet rock, wooden wall panels and wet/stained insulation should be replaced, underlaying surfaces should be scrubbed, cleaned and disinfected |

All mold remediation work must be performed by a New York State-licensed Mold Remediation Contractor using trained and licensed remediation workers following all required containment and dust control procedures.

# ▽ VALCON Environmental and Mechanical Contracting LLC

## Environmental Consulting and Construction Management Services

25450 Bates Rd. Greatneck - NY, 11020 | www.valcon-engineering.com | 1-516 312 6589

1. Remove or protect any remaining contents items and built-in components and appliances from work area

2. Construct a negative-pressure containment . This containment area shall consist of walls of 6 mil fire retardant polyethylene sheeting with a slit entry and covering flap. Area should be maintained under negative pressure The containment area should be large enough to accommodate all water damaged materials

3. Remove and replace all damaged/stained sheet rock, wooden panel, insulation., Scrub and clean the tile, grout, metal and wood surfaces with soap or detergent and water, apply disinfectant when the area visibly free from mold.

4. Once all contamination is bagged, remove bags from the containment. Once all containments bags are removed from containment, HEPA vacuum all surfaces in the containment area. Floors inside and outside containment shall be cleaned with a disinfectant.

5. Leave the work area dry and visibly free from mold, dust and debris

- **Cost and Time Frame for given scope of work:**

Mold growth may continue until all remediation work has been completed and the source of moisture is identified and corrected, especially if building materials and finishes are not fully dry.

This Mold Remediation Plan can be revised, as necessary, to accommodate such discoveries during the work. Therefore, the cost and time required to perform and complete all remediation work is an estimate only and based on experience.

The entire remediation and replacement should take up to two weeks and cost between $ 50,000- $75,000

# Exhibit D



# Mold Remediation Service Agreement

Directed to:

Mr. Arthur Weiner

Arthur@unitedmgmt.com

This proposal is built for the location mentioned above. With reference to the Valcon Environmental and Mechanical Contracting LLC mold assessment findings along with a live walkthrough, RM Environmental LLC is offering a complete and professional mold remediation service including the removal and remediation of all surface level growth, airborne contamination, properly scrub the air, demo and dispose of contaminated material, applying drying methods, deterring mold growth, and preparing for any possible reconstruction.

Thank you for the opportunity to be of service. If additional findings are discovered we will notify you as soon as possible to adjust changes in scope of work and potential cost implications. We greatly appreciate your business.

IICRC S-520 guidelines strictly adhered to.

Location(s) of Remediation work: basement, 1st floor

Scope of Work – Remediation:

- Remove and/or protect remaining contents and built-in components and appliances from work area
- Construct negative pressure containment using 6 mil fire retardant poly sheeting area maintained under negative pressure. Containment to be large enough to accommodate all water damaged and/or contaminated material
- Remove all damaged/stained sheetrock, wooden panels, insulation, acoustic ceiling tiles
- Scrub / clean tile, grout, metal, and wood surfaces with IAQ
- Bag all contamination and remove from the containment
- Once all material is properly removed, HEPA vacuum all surfaces in the containment area including the floors inside and outside of the containment area
- Apply antimicrobial disinfectant agent to substrate through the use of a fogger
- Apply fungicidal protective coating against all exposed substrate
- Breakdown and leave the area dry, free from visible mold, dust, and debris

RM Environmental Specialists LLC
NY DOL Mold Remediator Company License # 01438
RMESpecialists@gmail.com
RMEspecialists.com
(347) 235-3739

- Re-fog the treated area with a botanical based disinfectant or similar substance to remove any lingering contaminated airborne particles.
- Air-inspection test is at the sole discretion of the homeowner. RM Environmental Specialists LLC can refer a third-party unbiased source.
- RM Environmental Specialists LLC reserves the right to revise estimate based on additional findings.

Scope of Work – Recon:

- Protect flooring with ram board, plasticize personal property
- Install air scrubber to reduce dust
- Re-insulate areas where contaminated insulation panels removed
- Install/replace moisture resistant drywall
- Install drywall on ceiling in master bedroom and spare bedroom
- Tape, compound, plaster, sand drywall
- Prime and paint drywall, two coats
- Install baseboard molding, caulk, paint with two coats
- Replace wood paneling on west balcony
- Finish wood paneling with oil based paint
- Breakdown material
- Post-construction clean up including wet wiping, HEPA vacuum

## Cost Structure

| Item | Rate | Total |
|---|---|---|
| Remediation Cost | | $55,000 |
| Recon | | $32,000 |
| Waste Disposal | | $0.00 |
| Grand Total | | $87,000.00 |

*Credit card processing fee may be applied, excludes applicable sales tax
Check made payable to RM Environmental Specialists LLC

## Terms and Conditions

A.    **Scheduling –** RM Environmental Specialists LLC to arrange scheduling with GC / property owner for most convenient and quickest start date.

B.    **Homeowner Responsibilities –** electricity and water access, providing RM Environmental Specialists LLC with entry/access. Helping to gain access to the contaminated areas by aiding in the relocation of personal belongings.

C.    **General -** In the event that RM Environmental Specialists, LLC discovers conditions or circumstances during the mitigation project which were not visible and included within this proposal (of which will increase the scope of work or alter the schedule of work), RM Environmental Specialists, LLC will notify the customer (or customer's representative) of such conditions or circumstances and will reserve the right to adjust this Work Order.

D.    **Air Quality Assurance –** Property owner is responsible for air quality samples/tests post completion of the

RM Environmental Specialists LLC
NY DOL Mold Remediator Company License # 01438
NYS DOL Asbestos Handling License # 132884
RMEspecialists@gmail.com
RMEspecialists.com
(347) 235-3739

mold treatment. RM Environmental Specialists, LLC can provide non-affiliated air monitoring firm recommendations upon request. For an additional fee, RM Environmental Specialists, LLC can coordinate, monitor, and schedule the testing if desired for an additional cost. Inspection must be completed within three days of job completion. Once an air inspection validates that all mold toxins have been removed from the serviced area, the services rendered are considered completed.

E.     **Cancellation Policy** – Non-cancellable

F.     **Liability Limitations** -

(1.) The water mitigation services agreed to herein shall not be construed as a remodeling, rebuilding, building, or construction of the building. RM Environmental Specialists, LLC sole responsibility is to remove water damaged belongings and material, and apply protective fungicidal coatings to the cleaned out area in all of the mitigation locations described in in the Scope of Work above.

(2.) RM Environmental Specialists, LLC is not responsible or liable for the non-discovery of any water damage, water problems, or mold infestation or mold problems, or other physical conditions of the Subject Property, or any other problems not found during the demo/mitigation, or which may occur or may become only evident after water mitigation has begun, or even been completed. RM Environmental Specialists, LLC is not an insurer nor guarantor against water problems, mold problems, or other building defects that may exist in the Subject Property and its improvements, systems, or components. RM Environmental Specialists, LLC assumes no responsibility or liability for the cost of repairing any water problems, or any other defects or conditions. RM Environmental Specialists, LLC is not responsible or liable for any undiscovered and/or future water problems, mold problems or any other future home or building failures, repairs, or problems. RM Environmental Specialists, LLC is not responsible for the rebuilding of the property or building after the water mitigation services has been completed.

(3.) RM Environmental Specialists, LLC and its independent contractors, employees, management, and stockholders are limited in liability to the total of the water mitigation fee paid to RM Environmental Specialists, LLC by Client in the event that Client or any third party claims that the RM Environmental Specialists, LLC is in any way liable for negligently performing water mitigation or mold remediation services, or in the preparation of any reports, or for any other reason or claim that RM Environmental Specialists, LLC has not satisfied all of its obligations hereunder. Client hereby agrees to indemnify, defend, and hold harmless RM Environmental Specialists, LLC and its independent contractors, employees, and shareholders if any third party brings a claim against RM Environmental Specialists, LLC and/or its independent contractors, employees, management, and stockholders relating to the mold remediation services or any written report described herein.

(4.) Arbitration: any controversy or claim made between the parties hereto, arising directly or indirectly out of, connected with, or relating to the interpretation of the Agreement, the scope of the services, the water mitigation services provided by RM Environmental Specialists, LLC, or any other matters of any kind involving any act or omission performed under this Agreement, or promises, representations, or negotiations concerning duties of the RM Environmental Specialists, LLC hereunder, shall be submitted to arbitration in accordance with the applicable rules of the American Arbitration Association. The parties shall mutually appoint an arbitrator who is knowledgeable and familiar with water extraction / testing industry. Judgment on any award may be entered in any court having jurisdiction, and the arbitration decision shall be binding on all parties. Secondary or consequential or punitive damages are specifically excluded.

(5.) Entire Agreement: This agreement constitutes the entire agreement between the parties hereto, and supersedes any and all prior representations, discussions, or agreements, whether written or oral. No amendment, change, or variance from this agreement shall be binding on either party unless mutually agreed to, in writing, and signed by the parties here. If any provision of this agreement is held invalid or enforceable by any court of final jurisdiction, it is the intent of the parties that all other provisions of this agreement shall be construed to remain fully valid, enforceable, and binding on the parties.

RM Environmental Specialists LLC
NY DOL Mold Remediator Company License # 01438
NYS DOL Asbestos Handling License # 132884
RMEspecialists@gmail.com
RMESpecialists.com
(347) 235-3739

33 of 34

**PAYMENT TERMS:**

1/2 of mobilization/deposit and a signed copy of this "Proposal/Contract" must be returned prior to our proceeding with any of the aforementioned work. Full payment is due upon completion. RM Environmental Specialists, LLC reserves the right to charge a 15% late fee of the remaining balance effective 30 days after job completion and an additional 15% fee for every 30 days following.

**AGREEMENT POLICY**

Signature below indicates acceptance of all above terms and conditions within this "Proposal/Contract" for the service(s) to be provided as described by RM Environmental Specialists, LLC

Accepted by:

Customer Signature

__Arthur Wiener__
Customer Name (Print)

__1/6/2023__
Date

RM Environmental Specialists LLC
NY DOL Mold Remediator Company License # 01438
NYS DOL Asbestos Handling License # 132884
RMEspecialists@gmail.com
RMEspecialists.com
(347) 235-3739

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
------------------------------------------------------------x
ARTHUR WIENER

                    Plaintiff/Petitioner,

        - against -                              Index No. 504650/2023

LOWE'S HOME CENTERS, LLC

                    Defendant/Respondent.
------------------------------------------------------------x

### NOTICE OF ELECTRONIC FILING
### (Mandatory Case)
### (Uniform Rule § 202.5-bb)

**You have received this Notice because:**

> 1) The Plaintiff/Petitioner, whose name is listed above, has filed this case using the New York State Courts E-filing system ("NYSCEF"), and

> 2) You are a Defendant/Respondent (a party) in this case.

- **If you are represented by an attorney:**
  Give this Notice to your attorney.  (Attorneys: see "Information for Attorneys" pg. 2).

- **If you are not represented by an attorney:**
  You will be served with all documents in paper and you must serve and file your documents in paper, unless you choose to participate in e-filing.

If you choose to participate in e-filing, you **must** have access to a computer and a scanner or other device to convert documents into electronic format, a connection to the internet, and an e-mail address to receive service of documents.

The benefits of participating in e-filing include:

- serving and filing your documents electronically

- free access to view and print your e-filed documents

- limiting your number of trips to the courthouse

- paying any court fees on-line (credit card needed)

**To register for e-filing or for more information about how e-filing works:**

- visit: www.nycourts.gov/efile-unrepresented or
- contact the Clerk's Office or Help Center at the court where the case was filed. Court contact information can be found at www.nycourts.gov

6/6/18  EFM-1

To find legal information to help you represent yourself visit www.nycourthelp.gov

## Information for Attorneys
### (E-filing is Mandatory for Attorneys)

An attorney representing a party who is served with this notice must either:

    1) immediately record his or her representation within the e-filed matter on the NYSCEF site www.nycourts.gov/efile ; or

    2) file the Notice of Opt-Out form with the clerk of the court where this action is pending and serve on all parties. Exemptions from mandatory e-filing are limited to attorneys who certify in good faith that they lack the computer hardware and/or scanner and/or internet connection or that they lack (along with all employees subject to their direction) the knowledge to operate such equipment. [Section 202.5-bb(e)]

For additional information about electronic filing and to create a NYSCEF account, visit the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center (phone: 646-386-3033; e-mail: nyscef@nycourts.gov).

Dated: 02/13/23

Ira N. Glauber

Name

DILWORTH PAXSON LLP

Firm Name

99 Park Avenue, Suite 320

Address

New York, NY 10016

(917) 675-4252

Phone

iglauber@dilworthlaw.com

E-Mail

To:  Lowe's Home Centers, LLC

1000 Lowe's Boulevard

Mooresville, NC 28117

Index #                 Page 2 of 2                6/6/18   EFM-1





U.S. POSTAGE PAID
FCM LG ENV
NEW YORK, NY
10017
APR 26, 23
AMOUNT
**$2.70**
R2305M148793-02

28117

UNITED STATES POSTAL SERVICE
RDC 99

RECEIVED in LEGAL
MAY 01 2023

MAY 0 1 REC'D

Lowe's SSC - M

171 ave nos,
Suite 320
New York, New York 10016

Lowe's Home Centers
1000 Lowe's Boulevard
Mooresville, North Carolina
28117